**SO ORDERED**



NANCY V. ALQUIST
U. S. BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | | |
|---|---|---|
| In re: | * | |
| Renee L. Sampson-Pack, | * | Case No. 12-30589-NVA |
| | | (Chapter 13) |
| Debtor | * | |

\*   \*   \*   \*         \*   \*   \*   \*   \*

**MEMORANDUM ORDER SUSTAINING CHAPTER 13 TRUSTEE'S
OBJECTION [doc. 23] TO CONFIRMATION OF CHAPTER 13 PLAN**

Renee L. Sampson-Pack, the debtor herein (the "Debtor"), proposed an amended Chapter 13 Plan (the "Plan") [doc. 20] calling for monthly payments, from the Debtor's income, in the amount of $900 over a period of 60 months.[1] Based on the claims filed, the Plan will pay all claims in full. The Debtor, however, could afford to pay more to the plan each month by operating on a tighter budget and could pay the claims off earlier, but she has elected not to do so. Despite the Debtor's elective stretch out of the plan payment period, the Plan does not propose to pay any interest on the claims.

---

[1] The Plan also provides that the Debtor will pay into the Plan one half of the amount of the refund she receives on account of her jointly-filed state and federal tax returns for tax years 2013-2016.

The Chapter 13 Trustee, Ellen W. Cosby (the "Trustee"), objects to the Plan. She argues that even though the Plan pays all claims in full, it is not confirmable because it does not comply with both prongs of the confirmation requirement set forth in §1325(b)(1) of the Bankruptcy Code.[2]  The Trustee argues that in order for the Plan to be confirmed, the Debtor would need to make the commitment period shorter such that she would dedicate all of her available disposable income to the Plan (and still pay 100% of the claims), or compensate the creditors by paying them interest.

For the reasons stated herein, this Court agrees with the Trustee and finds that §1325(b)(1) requires the Debtor to pay interest on unsecured claims if the Debtor fails to commit all disposable income to the payment of unsecured creditors, but nonetheless pays unsecured creditors in full. This Court sustains the Trustee's Objection and denies the confirmation of the plan with leave to amend.

**Applicable Law**

A Chapter 13 Plan may not be confirmed over the objection of an unsecured creditor or the trustee unless the Plan complies with the provisions of §1325(b) of the Bankruptcy Code. *Petro v. Mishler,* 276 F.3d 375 (7th Cir. 2002); *In re Brumm*, 344 B.R. 795 (Bankr. N.D.W.Va. 2006). Section 1325(b) of the Bankruptcy Code provides --

> **(b)(1)** If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the Plan, then the court may not approve the Plan unless, as of the effective date of the Plan--
>
> **(A)** the value of the property to be distributed under the Plan on account of such claim is not less than the amount of such claim; or

---

[2] Title 11 of the United States Code.

2

> **(B)** the Plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the Plan will be applied to make payments to unsecured creditors under the Plan.

This section governs the amount of income that must be dedicated to a Chapter 13 plan and was designed to deal with plans that yield little or nothing for unsecured creditors. *In re Hight-Goodspeed*, 486 B.R. 462, 463 (Bankr. N.D. Ind. 2012). The purpose of this section is to insure that when proposing a plan, a debtor dedicates the necessary amount of effort and seriousness in repaying unsecured creditors. *Id.*

### Discussion

On its face, §1325(b)(1) requires a Debtor to comply with either subsection (A) (requiring a debtor to pay "the amount of the claim") or, in the alternative, subsection (B) (requiring that "all of the debtor's projected disposable income" be dedicated to a plan) before the court can confirm the plan. "As written, §1325(b)(1) requires compliance with either subsection (A) or (B), but not both." *In re Bailey*, 13-60782, 2013 WL 6145819 (Bankr. E.D. Ky. 2013) (quoting *In re Jones,* 374 B.R. 469, 469 (Bankr.D.N.H.2007)); *In re Winn*, 469 B.R. 628, 630 (Bankr. W.D.N.C. 2012) ("Only one of the prongs [of § 1325 (b)] need be met, not both.").

It is undisputed that the Debtor has failed to dedicate all of her disposable income as required by §1325(b)(1)(B). The Debtor is currently paying $900 per month for a period of 60 months, but her disposable income exceeds the amount she has dedicated to the Plan by

3

approximately $500 to $1000 a month.[3]  Because the Debtor has not dedicated all of her disposable monthly income to the Plan, it cannot be confirmed under §1325(b)(1)(B).

Thus, the Plan must be confirmed, if at all, under §1325(b)(1)(A).  Section 1325(b)(1)(A) states that a plan may not be confirmed unless the value of property distributed on account of a claim is "not less than the amount of such claim."  *Id*.  The Debtor argues that this section entitles creditors to the face amount of their claims and no more, and accordingly, she proposes to pay her creditors 100% of the face amount of their claims.  The Debtor takes the position that §1325(b)(1)(A) does not require her to pay interest when her claims will be paid at 100% of face value, notwithstanding that she is not dedicating all of her disposable income to the Plan.

The Trustee argues that because the Debtor in this case has voluntarily decided to slow down the plan process by extending the Plan commitment period (which would be many months shorter while still providing for a 100% payout if the Debtor dedicated all of her disposable income), she must compensate her creditors for the time value of their claims and must do this by paying them interest.  By paying any lesser amount, the Trustee argues, the claims would not be paid in full - - the plan would not, "as of its effective date" distribute "property" the "value" of which in not less than the amount of the creditors' claims, as mandated by §1325(b)(1)(A).

According to the Trustee, when Congress intends that claims may be paid in full without interest, it has made this intent clear.  *See In re Krump*, 89 B.R. 821, 824 (Bankr. D.S.D. 1988) (finding that §1222(a)(2) of the Code does not require the payment of interest); *In re Fowler*, 394 F.3d 1208 (9th Cir. 2005) (finding that §1322(a)(2) does not require the payment of interest).  By way of illustration, §§1222(a)(2) and 1322(a)(2) mandate that a "plan shall – provide for the full

---

[3] Although the parties originally disputed the amount of the Debtor's disposable monthly income, they have stipulated that not all of the Debtor's disposable income is being dedicated to the Plan. *See generally* [doc. 41].

4

payment, in deferred cash payments of all claims entitled to priority under section 507….." Unlike §1325(b)(1)(A), neither of these sections (which are uniformly interpreted as not requiring interest) require a debtor to pay the "value" of the claim "as of the effective date" in order to provide full, *albeit* deferred, payment.

Absent such a phrase requiring the payment of "present value," courts have concluded that Congress did not intend that deferred payments must include interest. *In re Hageman*, 108 B.R. 1016, 1019 (Bankr. N.D. Iowa 1989); *See also In re Kingsley*, 86 B.R. 17 (Bankr. D. Conn. 1988) ("[I]t has been consistently held that when Congress intended to provide a claimholder with interest to compensate for the present value of a claim, it expressly provided for that treatment by the use of specific words, such as, '*value, as of the effective date of the plan equal to the allowed amount of such claim.*'"). Thus, because this language is included in §1325(b)(1), Congress did not excuse a debtor who utilizes this section to confirm her plan from paying interest in order to compensate a creditor fully for the value of its claim.

The Trustee relies on *Hight–Goodspeed, supra*. In that case, the court held that §1325(b)(1)(A) requires interest payments when a debtor does not devote all disposable income to the 100% Chapter 13 Plan. *Id*. In reaching this conclusion, the court determined that the phrase "as of the effective date of the Plan," found in §1325(b)(1), applies to both subsections (A) and (B). *Id*. at 464–65.

For the "value of the property to be distributed under the plan on account of such claim… [to be] not less than the amount of such claim" as of the effective date of the plan, the plan must provide compensation for the value of money paid over time. *Id*. at 465 ("If a debtor would prefer to have a more flexible or less rigorous budget it may choose to devote less than all of its

disposable income to the Plan; but the price for doing so, is that [unsecured claims] must be paid in full with interest."). An appropriate compensation for the value of time is interest on a claim. *Id.*

As noted in *Hight-Goodspeed,* various provisions of the Bankruptcy Code contain the phrase "as of the effective date of the Plan."[4] These provisions are interpreted uniformly to require the payment of interest to compensate creditors for a debtor's delayed payment. *Id.* at 464.[5] However, it is appropriate to look at the placement of the phrase "as of the effective date of the plan" and the phrase "the value" in various sections of the Bankruptcy Code. In other sections of the Code, the phrase "as of the effective date of the plan" appears *after* the words "the value." Conversely, in §1325(b)(1)(A), the phrase "as of the effective date" appears *before* the words "the value."

Notwithstanding that these phrases appear in a different order in §1325(b)(1)(A) than they do in other Code sections, the court in *Hight-Goodspeed* interpreted the phrases as they appear in §1325(b)(1)(A) to have the same meaning and effect as they do in other sections of the Code. *Id.* The court concluded that the placement of the phrase in §1325(b) reflects the desire of Congress to make the phrase "as of the effective date of the Plan" apply to both subsections (A) and (B). "[T]he meaning of those words is not changed by relocating the phrase 'as of the effective date of

---

[4] 11 U.S.C. §§ 1129(a)(7), 1225(a)(4), 1325(a)(4) (best interest of creditors test); §§ 1129(b)(2)(A)(i)(I, II), (B)(i), (C)(i), 1225(a)(5)(B)(ii), 1325(a)(5)(B)(ii) (cram down); § 1129(a)(9)(C)(i) (payment of priority claims).

[5] *See Till v. SCS Credit Corp.,* 541 U.S. 465, 469, 472–73, 124 S.Ct. 1951, 1955–56, 1958, 158 L.Ed.2d 787 (2004) (discussing § 1325(a)(5)(B)(ii)); *Associates Commercial Corp. v. Rash,* 520 U.S. 953, 957, 117 S.Ct. 1879, 1882–83, 138 L.Ed.2d 148 (1997) (discussing § 1325(a)(5)(B)(ii)); *Rake v. Wade,* 508 U.S. 464, 469–70, 113 S.Ct. 2187, 2191, 124 L.Ed.2d 424 (1993) (discussing § 1325(a)(5)(B)(ii)); *United Savings Association of Texas,* 484 U.S. at 377, 108 S.Ct at 633 (discussing § 1129(b)(2)(A)(i)(II)). *See also, In re Airadigm Communications, Inc.,* 547 F.3d 763, 768–69 (7th Cir.2008) (§ 1129(b)(2)(A)(i)(II)); *Koopmans v. Farm Credit Services of Mid–America, ACA,* 102 F.3d 874 (7th Cir.1996) (§ 1225(a)(5)(B)(ii)); *In re Hardy,* 755 F.2d 75 (6th Cir.1985) (§ 1324(a)(4)); *Matter of Burgess Wholesale Mfg.,* 721 F.2d 1146, 1147 (7th Cir.1983) (§1129(a)(9)(C)). *In re Hight-Goodspeed*, at 464 (Bankr. N.D. Ind. 2012).

the Plan.'"  *Id*. at 464 - 65.   The *Hight-Goodspeed* court concluded that, "[t]he two statements 'the value, as of the effective date of the Plan, of the property to be distributed ...' and 'as of the effective date of the Plan—the value of the property to be distributed ...' have the same meaning." *Id.* at 465.

The Debtor, in turn, relies upon *In re Stewart-Harrel*, 443 B.R. 219 (Bankr. N.D. Ga. 2011), in which the court construed the §1325(b) language differently. The court held that the better interpretation of the phrase "as of the effective date of the plan" in §1325(b)(1) is that it refers to the date on which the court makes the determination whether the debtor will proceed under subsection (A) or (B).  *Id.* at 222.  In that court's view, reading the phrase "as of the effective date of the plan" to require the payment of interest may make sense with respect to subsection (A), but would have no meaning if applied to subsection (B).  *Id.* at 222–23.  The court also reasoned that holding that subsection (A) requires the payment of interest would create a contradiction within the Bankruptcy Code: interest would have to be paid on claims of general unsecured creditors under §1325(b)(1)(A), but not on priority claims under §1322(a)(2).  *Id.* at 223-24.[6]  The court in *Hight-Goodspeed* acknowledged that while this contradiction may exist, the difference in treatment of priority and non-priority unsecured claims should be attributed to the multiple amendments to the Bankruptcy Code which have caused certain discrepancies.  *In re Hight-Goodspeed, supra* at 465.

---

[6] A debtor is never compelled to pay interest on unsecured claims in order to confirm a Chapter 13 Plan under § 1325 (b).   To avoid paying interest, a debtor need only devote all of his or her disposable income to the Plan.   *See In re Hight-Goodspeed*, 486 B.R. 462, 465 (Bankr. N.D. Ind. 2012).

7

This Court believes that the Trustee has the more compelling position.  It is not illogical, in this Court's view, to conclude that Congress intended the phrase "as of the effective date of the plan" to modify both prongs of §1325(b)(1).  As applied to subsection (B), the phrase "as of the effective date of the plan," would mean the date on which the value and the amount of projected future income should be calculated.  *See In re Braswell*, 2013 WL 3270752 (Bankr. D. Or. June 27, 2013) ("In order to apply to both subsections (A) and (B) and make sense, the second wording was used in §1325(b)(1).").

This Court recognizes that other jurisdictions disagree with an interpretation of §1325(b)(1)(A) that requires interest payments, even where a debtor fails to dedicate all of her monthly disposable income to a plan.  *See, e.g., In re Ross*, 375 B.R. 437, 444 *opinion amended on reconsideration*, 377 B.R. 599 (Bankr. N.D. Ill. 2007) ("Indeed, §1325(b)(1)(A) does not specify that the value to be paid must be the 'value, as of the effective date of the Plan.'  Hence, §1325(b)(1)(A) does not require the payment of present value through interest for unsecured claims.") (internal citations omitted).  *See also*,  *In re Richall*, 470 B.R. 245, 249 (Bankr. D.N.H. 2012) (dismissing trustee's concerns regarding the time value of money and stating, "[t]he Debtors' Plan provides for payment of all unsecured claims in full during a five year term through payments of approximately one-half of their disposable income. Thus, the Debtors' Plan complies with §1325(b)(1)(A).").

This Court agrees with the court in *Hight-Goodspeed*, that denying interest to unsecured creditors who must wait to be paid on their claims longer than a debtor's disposable income would otherwise allow is to "overlook the language in [§1325](b)(1) that precedes sub-paragraph (A)...." *See Id*. at 465.  The use of the phrase "as of the effective date" in conjunction with language calling for the payment of the value of a claim is interpreted throughout the Bankruptcy Code as

providing for interest.  *Krump*, *supra*, at 824.  The result should be no different here.  Statutory interpretation is a holistic endeavor, and identical words used in different parts of the same statute are intended to have the same meaning.  *In re Parke*, 369 B.R. 205, 208 (Bankr. M.D. Pa. 2007).

A debtor must pay the full value of the claim "as of the effective date of the plan" because "a dollar received today is worth more than a dollar to be received in the future."  *Parke,* 369 B.R. at 208, (*quoting In re Szostek*, 886 F.2d 1404, 1406 at n. 1 (3d Cir.1989)).   The price a debtor pays for not committing all of her disposable income to her plan is interest.  *Hight-Goodspeed*, *supra*, at 465.  This insures, consistent with the language of § 1325(b)(1), that creditors either are receiving all of a debtor's disposable income *or* that that they are compensated for the debtor's elective delay. [7]

---

[7] The Fourth Circuit recently analyzed the meaning of the term "applicable commitment period," as used in §1325(b)(1)(B). *Pliler v. Stearns,* No. 13-1445 (4th Cir. Mar. 29, 2014).  In *Pliler,* the Fourth Circuit held that above-median income debtors (who did not propose to pay claims in full) must maintain a 60-month plan, even though they had, on paper, negative monthly disposable income. The court stated that its decision was in harmony with the "core purpose" underpinning the 2005 Bankruptcy Code revisions, that "debtors devote their full disposable income to repaying creditors."  *Id.* at 9 (quoting *Ransom v. FIA Card Servs., N.A.,* 131 S. Ct. 716, 729 (2011)).  This Court believes the instant decision similarly is in harmony with the core purpose of the amendments. Requiring a debtor to pay interest for delayed plan payments is an acceptable economic substitute for devoting all monthly disposable income to the plan.

**Conclusion**

This Court concludes that debtors who do not devote all of their disposable income to a Chapter 13 plan, but pay all claims in full, must pay a rate of interest in exchange for their election to make payments over a longer period of time. For the foregoing reasons, it is, by the United States Bankruptcy Court for the District of Maryland

ORDERED that the Trustee's objection [doc. 23] to confirmation of the Debtor's amended Chapter 13 Plan [doc. 20] is hereby sustained; and it is further

ORDERED that the Debtor is granted leave to amend the Plan; and it is further

ORDERED that an amended Plan must be filed within fourteen days of the date of the entry of this Order or this case will be dismissed.

cc:  all counsel
     all parties

**END OF MEMORANDUM ORDER**